FILED
2015 Mar-02  PM 04:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| KATRINA ANN ASKEW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:13-cv-01782-JEO |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Katrina Ann Askew brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security ("Commissioner") finding that she is no longer disabled under the Social Security Act. (Doc. 1 & 10).[1]  The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference dated January 14, 2013.  The parties have consented to the jurisdiction of this court for disposition of this matter.  (Doc. 9).  *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

The plaintiff was originally found to be disabled for Child's Disability Benefits ("CDB") under Title II of the Social Security Act, and Supplemental Security Income benefits under Title XVI

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

of the Act on May 31, 2005.  (R. 19, 49-50).[2]  Premised on a Continuing Disability Review on August 30, 2010, it was determined that she was no longer disabled as of August 1, 2010.  (*Id*.)  The determination was upheld on the plaintiff's request for reconsideration.  (R. 19, 70-71).  She then requested a hearing before an Administrative Law Judge ("ALJ").  (R. 92).  The plaintiff, her counsel, and a vocational expert ("VE") attended the hearing on August 23, 2011.  (R. 32-48).

The ALJ issued a decision on September 13, 2011, finding that the plaintiff's disability ended on August 1, 2010.  (R. 19).  Specifically, the ALJ found that the plaintiff's condition had improved, that she did not have an impairment or combination of impairments listed in the regulations, and that she possessed the residual function capacity ("RFC") to perform work-related activities at all levels of physical exertion, with limited mental restrictions.  (R. 21-26).

The Appeals Council denied Askew's request for review on July 24, 2013.  (R. 1-5).  On that date, the ALJ's decision became the final decision of the Commissioner.  The plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g). (Doc. 1).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

---

[2]References to "R. __" are to the page number of the administrative record, which is encompassed within Docs. 7-1 through 7-9.

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

Because this case involves the cessation of benefits, the review process involves an eight-step evaluation process concerning the CDB of Title II and a seven-step process for the Title XVI benefits. 20 C.F.R. §§ 404.1594 & 416.994. The review includes (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listed impairment, (3) whether the claimant has medically improved, (4) whether any medical improvement relates to the ability to work, (5) whether any exception applies if medical improvement is noted, (6) whether the claimant's impairment or combination of impairments is severe, limiting her ability to perform basic work activities, (7) an assessment of the claimant's RFC, and (8) an analysis of what work is available for the claimant to perform. *See* 20 C.F.R. §§ 404.1594(f) & 416.994(b)(5).

To qualify for disability benefits and establish his or her entitlement for a period of

3

disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

## IV.  FINDINGS OF THE ALJ

The plaintiff was 24 years old at the time of the ALJ's decision on September 13, 2011. (R. 36).  She completed the twelfth grade and subsequently received her diploma by taking the "grad  exam."  (*Id.*)  She has no past relevant work experience.  (R. 21, 25, 37).  Her most recent favorable medical decision, finding her disabled, was rendered on December 27, 2006.  (R. 21). This date is known as the "comparison point decision" ("CPD").  (*Id.*)  At the time of her CPD, the plaintiff had the medically determinable severe impairment of borderline intellectual functioning.  (*Id.*)

In her September 2011 decision, the ALJ found that the plaintiff had a severe impairment of borderline intellectual functioning and a non-severe impairment of obesity.  (*Id.*)  The ALJ also found that the plaintiff had the RFC to perform a full range of medium work with some

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

limitations.  (R. 23).  Finally, the ALJ determined, premised on the testimony of the VE that a

significant number of jobs were available to a person with the plaintiff's limitations.  (R. 26).

The ALJ concluded that the plaintiff's disability ended on August 1, 1010, and she had not

become disabled again since that date.  (R. 27).

## V.  DISCUSSION

The plaintiff claims that the decision of the ALJ is due to be reversed and benefits awarded

or that the matter is due to be remanded for "further proper consideration" for two reasons.  First,

she argues that the ALJ failed to properly evaluate her impairments based on the requirements of

Listing 12.05C.  (Doc. 10 at 5-7).  Second, she argues that the ALJ failed to follow the "slight

abnormality" standard in finding that her obesity was a non-severe impairment.  (*Id*. at 7-11).  The

Commissioner argues that these contentions are without merit.  (Doc. 12-1 at 8).

### A.      Listing 12.05C

The plaintiff asserts that based upon the medical evidence in the record, she meets Listing

12.05C of the Regulations.  Listing 12.05 addresses "intellectual disability"[4] as follows:

> Intellectual disability refers to significantly subaverage general intellectual
> functioning with deficits in adaptive functioning initially manifested during the
> developmental period; *i.e.*, the evidence demonstrates or supports onset of the
> impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in
> A, B, C, or D are satisfied.
>
> ....
>
> C.      A valid verbal, performance, or full scale IQ of 60 through 70
>         and  a  physical  or  other  mental  impairment  imposing  an

---

[4]The term "intellectual disability" replaced the term "mental retardation" on September 3, 2013.  It does not
affect the analysis of this matter. *See Change in Terminology*, *"Mental Retardation" to "Intellectual Disability,"* 78
Fed. Reg. 46,499 (Aug. 1, 2013).

> additional and significant work-related limitation of
> function....

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05.  The introductory section to the mental disorders listings notes:

> The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorder listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability.  It also contains four sets of criteria (paragraphs A through D).  If [an] impairment satisfied the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that [the claimant's] impairment meets the listing.

20 C.F.R. Part 404, Subpt. P, App. 1, § 1200 (Introduction).  A claimant meets the criteria for presumptive disability under section 12.05C "when [she] presents a valid IQ score of 60 through 70 inclusive, and when [she] presents evidence of an additional mental or physical impairment significantly affecting [her] ability to work."  *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997).

The plaintiff premises her § 12.05C claim on her IQ scores and her obesity.  (Doc. 10 at 6-7).  Specifically, she cites to her high school full-scale IQ of 53 (R. 289), her April 12, 2000 full-scale IQ score of 56 (R. 245), and her February 17, 2009 full-scale IQ score of 65.  (R. 238).  According to the plaintiff's counsel, these scores "clearly place[ the p]laintiff in the mildly retarded range of intellectual abilities."  (Doc. 10 at 6).  When these scores are considered with the plaintiff's obesity, her counsel concludes, she meets the 12.05C Listing.  (*Id.*)  The Commissioner retorts that the plaintiff's argument "ignores the requirement set out in the introductory paragraph to Listing 12.05 ..., which is the basis for the ALJ's decision."  (Doc. 12-1 at 9 (citing R. 22-23)).  More specifically, the Commissioner states that "[b]ecause [the p]laintiff did not meet the requirements set out in the introductory paragraph ... , there was no need for the ALJ to consider the additional criteria set out in 12.05C."  (*Id.*)

6

The plaintiff's argument is flawed for a number of reasons.  First, a valid IQ score of 60 to 70 after age 22 only "create[s] a rebuttable presumption of a fairly constant IQ throughout [a claimant's] life."  *Hickel v. Comm'r of Soc. Sec.*, 539 Fed. App'x 980, 983 (11th Cir. 2013) (citing *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001)) (explaining that, absent evidence of sudden trauma that could cause retardation, a claimant who presents a valid IQ score need not also present evidence that her mental impairment arose before age 22).  "However, 'a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.' "  *Hickel*, 539 Fed. App'x at 983-84 (quoting *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)); *see also Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (stating that the ALJ may disregard IQ test results that are inconsistent with other record evidence because the regulations require the ALJ to examine intelligence tests and other evidence, such as the medical report and the claimant's daily activities and behavior).

Second, substantial evidence in the record supports the ALJ's conclusion that the plaintiff was no longer disabled.  To begin, Dr. Robert Summerlin, a consulting psychologist, evaluated the plaintiff on August 27, 2010.  The ALJ summarized Dr. Summerlin's evaluation of the plaintiff as follows:

> [T]he claimant reported that she had never received inpatient psychological treatment, nor had she been involved in services with a psychologist, psychiatrist, or other mental health professional....  The claimant further reported that while she repeated tenth and twelfth grades and she did not pass the high school exit exam at the end of her senior year, she did complete her high school education and she later passed the exit exam and was awarded a diploma....  Dr. Summerlin stated that the claimant was oriented in regards to person, place, time, and circumstance and that while her responses were slow, she correctly subtracted serial three's beginning at the number twenty....  He noted that the claimant's abstract thinking ability, fund of general information, computational skills, and vocabulary were suggestive of an

7

> individual with borderline to low average intelligence and a high school education.... The claimant's thought processes were logical, coherent, and focused, and her thought content was responsive to questioning.... Dr. Summerlin noted that he reviewed the results of the claimant's intelligence testing conducted in December of 2006 by Dr. Dana Davis.... He stated that those results produced a full-scale IQ of 67, but that he felt the claimant's functional IQ was somewhat higher than her measured IQ.... Dr. Summerlin diagnosed the claimant with borderline intellectual functioning and assigned her a GAF of 60, noting that she had moderate cognitive limitations affecting her personal, social and occupational functioning.... Dr. Summerlin went on to state that he believed the claimant had adequate "common sense" to manage funds without assistance....

(R. 24 (record citations omitted)).  The ALJ's conclusion is also supported by the opinions of state

agency consulting psychiatrist Dr. Samuel Williams, who opined that the plaintiff

> would have no problems with understanding, remembering or carrying out simple tasks for a period of [two] hours.  [She] would experience some difficulty with complex or detailed tasks.  [She] would work the best in a well spaced work environment around a few well known workers.  Supervision should be given in a positive constructive manner.  Contact with the general public should be infrequent and on a casual basis.  The changes in the workplace should be infrequent and gradually introduced.

(R. 276).  The ALJ noted, "Although Dr. Williams did not examine the claimant, he provided

specific reasons for his opinions indicating that they were based on the evidence of record, including

careful consideration of the objective medical evidence and the claimant's allegations regarding

symptoms and limitations." (R. 25).  The ALJ also noted that "Dr. Williams' opinions are internally

consistent and they are consistent with the evidence as a whole."  (*Id*.)  Accordingly, the ALJ

concluded that they were well supported and "have been given significant weight."  (*Id*.)

The plaintiff's testimony at the hearing also supports the determination of the ALJ.  She

testified that she received a high school diploma and passed all but the reading portion of the

graduation examination.  (R. 36-37).  She obtained her driver's license after taking the test a second

time.  (R. 37).  She is able to read and use a computer to do word puzzles, check email and visit

Facebook.  (R. 39).  She has no problems standing, walking, sitting, or lifting items.  (R. 40).

Portions of the plaintiff's mother's observations also support the ALJ's determination.  For instance, her mother, Annie Askew, states that the plaintiff washes dishes and clothes, watches television, spends time on the computer, drives, shops, sweeps and vacuums.  (R. 164-72).  However, her mother says the plaintiff is limited in her ability to do her hair, to concentrate, and to follow instructions.  (*Id*.)  The ALJ discounted this latter testimony because it "is based on casual observation rather than objective medical testing" and it is subject to motivational bias due to her family relationship.  (R. 25).

Reviewing the record as a whole, the undersigned finds that the ALJ's determination that the requirements of Listing 12.05C were not met is supported by substantial evidence.  The foregoing evidence demonstrates that the plaintiff's adaptive functioning is significant.  *See*, *e.g.*, *Harris v. Comm'r of Soc. Sec.*, 330 Fed. App'x 813, 815 (11th Cir. 2009) (finding that substantial evidence supported the ALJ's denial of benefits where the claimant was never diagnosed with mental retardation, only borderline intellectual functioning and there was evidence he did well in special education classes and was able to hold several jobs, and he could dress and bathe himself, take care of his personal needs, manage money, read, communicate effectively, and do simple math); *Garrett v. Astrue*, 244 Fed. App'x 937, 939 (11th Cir. 2007) (affirming ALJ determination that limitations to adaptive functioning were not present, despite Garrett's low IQ score, where he was able to cook simple meals, perform chores such as dishwashing and yard work, build model cars, attend church, watch television, play cards, and walk in the mall).

**B.  Consideration of the Plaintiff's Obesity**

The plaintiff next argues that the ALJ erred in finding that she did not have a severe

9

impairment with regard to her obesity. (Doc. 10 at 8). She also argues that the ALJ erred in failing to consider the impact of her obesity as a non-severe impairment that impacted her ability to work. (*Id*.) The Commissioner retorts that (1) the ALJ properly found that the plaintiff's obesity was a non-severe impairment and (2) the plaintiff's latter argument is flawed in that "it is based on the erroneous assumption that the ALJ's finding her obesity to be a non-severe impairment satisfies the additional impairment requirement in Listing 12.05C." (Doc. 12-1 at 13).

### 1.    Severe versus Non-severe Impairment

The plaintiff's first contention is that her obesity should have been deemed a severe impairment. (Doc. 10 at 8). She premises this argument on the fact that she "was found to be so obese that she had to be put on a weight loss program." (*Id*. (citing R. 207-10)). The court disagrees for a number of reasons.

First, the plaintiff did not claim any disability premised on obesity nor did she identify any restrictions due to her weight on any claim form. (R. 139-40, 142-50, 156-71, 175-80, 182-95). Additionally, neither she nor her counsel identified any physical limitation due to obesity at her hearing. Where a claimant fails to raise a purported impairment in her filings or at her hearing, "the ALJ ha[s] no duty to consider" the same. *Robinson v. Astrue*, 365 Fed. App'x. 993, 995(11th Cir. 2010). *See also Street v. Barnhart*, 133 Fed. App'x 621, 627 (11th Cir. 2005) (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (noting that an "administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'")). This alone precludes the present challenge. However, premised on the record, the court is convinced that the ALJ adequately considered the plaintiff's obesity.

Second, the evidence shows that the plaintiff's weight is not a severe impairment. "A severe

impairment is an 'impairment or combination of impairments which significantly limit[s] [the claimant's] physical or mental ability to do basic work activities." *McMahon v. Comm'r of Soc. Sec.*, 583 Fed. App'x 886, 887 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(c)). Thus, "an impairment is non-severe 'if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities.'" *McMahon*, 583 Fed. App'x at 892 (citing 20 C.F.R. § 404.1520(a) & (b)). *See also Smith v. Comm'r of Soc. Sec.*, 535 Fed. App'x 894, 896 (11th Cir. 2013) (noting "an impairment is not severe if it does not significantly limit the claimant's ability to do basic work activities, which are defined as 'the abilities and aptitudes necessary to do most jobs'") (quoting 20 C.F.R. § 404.1521(b)).

> Examples of basic work activities include physical activities like walking, standing, and carrying, and "seeing, hearing, and speaking," as well as understanding, following, and remembering simple instructions, using judgment, "[r]esponding appropriately to supervision, co-workers[,] and usual work situations," and "[d]ealing with changes in a routine work setting."

*Smith*, 535 Fed. App'x at 896 (citing 20 C.F.R. § 404.1521(b)).

Nothing in the record demonstrates that the plaintiff's weight significantly limited her ability to do basic work activities. While her medical records note that she is obese and was place on a diet and exercise program, they do not indicate any limitation or restriction on her ability to work. (R. 210). The remainder of the record evidences that her obesity is not a significant limiting factor. The plaintiff's hearing testimony was, as noted already, that she had no difficulty lifting, sitting, standing or walking. (R. 40). Additionally, her daily activities demonstrate that her weight does not significantly limit her. She stated she was able to wash dishes, vacuum, do laundry, mop, make the beds, go to the grocery store and mow the grass. (R. 37- 40). The mere fact that the plaintiff is obese is insufficient to warrant a conclusion that she is significantly limited in her ability to do basic

work activities.

### 2. Failure to Consider the Impact of Both Severe and Non-severe Impairments

The plaintiff also argues that the ALJ failed to properly consider the combined impact of her severe and non-severe impairments on her ability to work. (Doc. 10 at 8). In support of her contention, the plaintiff cites to SSR 96-8p. (*Id.*) In pertinent part, the regulation provides that "[t]he adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p, 1996 WL 374184 at *5 (July 2, 1996). It also provides that "the adjudicator must consider limitations and restrictions imposed by all of an individuals's impairments, even those that are not 'severe.' " *Id.* Finally, it notes, "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim." *Id.*

The ALJ "evaluated the [plaintiff's] morbid obesity and accompanying impairments" under SSR 02-1p.[5] She stated:

> This ruling provides that I must assess the effect that obesity has on the claimant's ability to perform routine movement and necessary physical activity within the work environment. Because there is no listing for obesity, an individual with obesity will be deemed to have met the requirements of a listing if he or she has another impairment that, in combination with obesity, meets the requirements of a listing. Obesity is considered as a severe impairment when alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. The claimant's impairment of obesity does not meet the required levels of severity for a listed impairment. In reviewing the records, I considered section 1.00, et seq. In light of the claimant's medical history and obesity, the claimant's condition did not

---

[5] 67 Fed. Reg. 57859-02, 2002 WL 31026506 (September 12, 2000). "Under SSR 02–1P, an RFC assessment should take account 'of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.' " *Soloman v. Comm'r of Soc. Sec.*, 532 Fed. App'x 837, 841 (11th Cir. 2013).

12

> meet that listing level of severity.  While obesity may or may not increase the severity or functional limitations of other impairments, each case will be evaluated solely on the information in the case record.  In the present case, the claimant's file does not contain evidence indicating that her obesity alone has caused her to be unable to work, nor does it show that in combination with her other impairment that it has disabled her.  Thus, claimant' obesity is not, by itself, or in conjunction with her other impairment, so severe as to prevent her from working.

(R. 21-22).  To the extent the plaintiff's counsel argues that the ALJ failed to consider her impairments in combination, the foregoing dispels that contention.  The ALJ clearly considered her obesity in conjunction with the plaintiff's other severe impairment.  Accordingly, this claim is without merit.

As a part of this claim, the plaintiff appears to argue that the ALJ failed "to investigate the facts and develop the arguments both for and against granting benefits" and failed to "fully and fairly develop the record."  (Doc. 10 at 8-9).

> It is well-established that the ALJ has a basic duty to develop a full and fair record.  20 C.F.R. § 416.912(d) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995).  Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.  *See* 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating "[y]our responsibility.  You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled").

*Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  This claim also is without merit for a number of reasons.  The plaintiff never claimed she was disabled due to obesity.  She did not allege nor offer any evidence showing that obesity limited her ability to work.  Her counsel never requested or demonstrated that additional evidence was necessary for a more informed decision.  Finally, the record wholly supports the determination of the ALJ as discussed above.  Nothing suggests, much

13

less indicates, that obesity alone or in conjunction with the plaintiff's borderline intellectual functioning  precludes her from working within the RFC parameters articulated by the ALJ in her decision.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be **AFFIRMED**.

**DONE,** this the 2nd day of March, 2015.

**JOHN E. OTT**
Chief United States Magistrate Judge